THE STATE OF OHIO, APPELLEE, *v.* MONTGOMERY, APPELLANT.

[Cite as *State v. Montgomery* (1991), 61 Ohio St.3d 410.]

(No. 89-70—Submitted June 5, 1991—Decided August 14, 1991.)

412

*Anthony G. Pizza*, Prosecuting Attorney, *James D. Bates, Lawrence J. Kiroff* and *Dean P. Mandross*, for appellee.

*Randall M. Dana*, Public Defender, *David C. Stebbins, Kathleen A. McGarry* and *Sharon H. Hainley*, for appellant.

DOUGLAS, J. Appellant presents a number of issues for our consideration. (See Appendix, *infra.*) We have considered appellant's propositions of law, independently weighed the aggravating circumstances against the evidence of mitigation, and reviewed appellant's death sentence for appropriateness and proportionality. Upon review, and for the reasons which follow, we uphold appellant's convictions and affirm the sentence of death.

I

Previous cases decided by this court are dispositive of the issues presented by appellant in his third, twelfth, thirteenth, fifteenth, twenty-fourth, twenty-sixth, thirtieth, thirty-first and thirty-second propositions of law and, without further comment,[1] we reject these propositions of law. Likewise, we reject the arguments briefed by appellant under subsection A of his tenth proposition of law.

With respect to appellant's remaining propositions of law, upon careful review of the record and the applicable case law, we find no errors that would

---

1. See, generally, *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568.

undermine our confidence in the outcome of appellant's trial. Indeed, many of appellant's arguments have been waived. Accordingly, we reject appellant's remaining propositions of law and address, in opinion form, only the following issues which merit some discussion.

## II

Prior to trial, appellant moved for a change of venue. This motion was denied. In his twenty-ninth proposition of law, appellant contends that the denial of his motion constitutes reversible error. Specifically, appellant alleges that adverse publicity concerning his trial resulted in public antagonism toward appellant such that he could not, and did not, receive a fair trial in Toledo.

In *State v. Swiger* (1966), 5 Ohio St.2d 151, 34 O.O.2d 270, 214 N.E.2d 417, paragraph one of the syllabus, this court held that:

"The examination of jurors on their *voir dire* affords the best test as to whether prejudice exists in the community against the defendant, and where it appears that opinions as to the guilt of the defendant of those called for examination for jurors are not fixed but would yield readily to evidence, it is not error to overrule an application for a change of venue, in absence of a clear showing of an abuse of discretion."

The term "abuse of discretion" " * * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * " *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149. We find, as did the court of appeals, that the trial court did not "abuse its discretion" in denying appellant's motion to change venue.

A thorough review of the record before us demonstrates that many prospective jurors who were questioned concerning pretrial publicity had, indeed, obtained some form of information regarding appellant's crimes as a result of pretrial publicity. However, the record shows that a significant number of the prospective jurors were not influenced by the publicity, and that some knew nothing about the crimes. Furthermore, the record supports the conclusion that the impartiality of the members of the jury ultimately selected in the case at bar was not compromised by the pretrial publicity.

In his brief, appellant makes several representations regarding the nature and extent of pretrial publicity and the resulting public outrage directed toward appellant. However, these matters are not substantiated by the record and, hence, will not be considered.

The decision whether to grant or deny a motion for change of venue rests within the sound discretion of the trial court. Appellant has presented no persuasive argument indicating that the trial court abused its discretion. Thus, we reject appellant's twenty-ninth proposition of law.

### III

On the first day of testimony, the trial judge instructed the jury to avoid media accounts of the trial. In his twenty-third proposition of law, appellant contends that this instruction represents a failure of the trial court to adequately instruct the jury to avoid potentially prejudicial media accounts of the court's proceedings. Appellant contends that during the voir dire, the potential jurors were not instructed to avoid media accounts of the proceedings and, thus, the jurors were not impartial or indifferent. Appellant asserts, therefore, that his constitutional rights, as protected by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution were violated.

In *Warner v. State* (1922), 104 Ohio St. 38, 44, 135 N.E. 249, 251, we stated that " * * * in criminal cases it is not so much a question of what prejudice might be inferred from irregularities, omissions and technical errors, but rather a question [of] what error has probably intervened as shown by the record." In the instant case, appellant has failed to put forward evidence suggesting that any juror accessed prejudicial information between the voir dire and the first day of trial, when the jury was instructed as to media coverage. Moreover, despite the fact that several jurors acknowledged exposure to media coverage, these same jurors indicated that they could make an impartial evaluation of the evidence. Therefore, we find that appellant's constitutionally guaranteed right to a trial by an impartial jury was not jeopardized. Accordingly, appellant's twenty-third proposition of law is not well taken.

### IV

In the guilt phase, the trial court instructed the jury on the element of "purpose." In his twentieth proposition of law, appellant contends that the trial court's instruction was in error. With respect to the element of purpose necessary to sustain a conviction of aggravated murder or murder, appellant contends that the instruction "created an unconstitutional conclusive presumption * * *." Judge Abood's instruction to the jury was:

"The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.

"If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon."

Appellant asserts that this instruction is unconstitutional because the trial judge used the word "inferred" without adding a qualification that such an inference must be non-conclusive.

In *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, the United States Supreme Court defined a conclusive presumption as an "irrebuttable direction" to the jury to find intent upon proof of the defendant's voluntary action. *Id.* at 517, 99 S.Ct. at 2456, 61 L.Ed.2d at 47. Thus, a conclusive presumption unconstitutionally shifts the burden of persuasion to the defendant to disprove an element of the crime charged. *Id.* In the instant case, appellant argues that the jury's instruction contained a conclusive presumption which relieved the state of having to establish the material element of criminal intent. We do not agree. The fact that the words "may be" modify the word "inferred" in the trial judge's instruction to the jury supports such a conclusion. No reasonable jury could have felt compelled to presume intent on the basis of the trial judge's instruction. Therefore, the instruction was not a conclusive presumption. Accordingly, appellant's twentieth proposition of law is not well taken.

## V

R.C. 2903.01(B) provides, in part:

"No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * *aggravated robbery* * * *." (Emphasis added.)

Whoever violates R.C. 2903.01(B) is guilty of aggravated murder. R.C. 2903.01(C).

In his seventh proposition of law, appellant claims that the trial court erred in failing to grant appellant's motions for acquittal since, according to appellant, the evidence is insufficient to sustain his conviction for aggravated murder. Specifically, appellant contends that the evidence is insufficient to show that he possessed the mental state necessary to support a finding that appellant committed or attempted to commit aggravated robbery.[2] We disagree.

---

2. R.C. 2911.01 provides as follows:

The evidence in this case shows that appellant told Ogle to stop her vehicle and instructed her to exit the vehicle. Appellant then shot Ogle in the head and neck at close range, took her vehicle, and instructed Glover to drive the vehicle to Glover's home. We believe that, based upon this evidence, a reasonable jury could conclude that appellant *knowingly* obtained or exerted control over Ogle's property without her consent, and with the *purpose* to deprive Ogle of the property. Therefore, the evidence is sufficient to show that appellant committed a "theft offense" as that term is defined in R.C. 2913.01 (see R.C. 2913.02[A][1]) and, hence, the state adduced sufficient evidence regarding the mental state necessary to prove the aggravated robbery.

Appellant also suggests that there is insufficient evidence to show that he purposely caused Ogle's death *while* committing or attempting to commit aggravated robbery. Again, we disagree. In our judgment, the evidence is sufficient to warrant the inference that appellant purposely killed Ogle to deprive Ogle of her property and to obtain it for himself or another.

Accordingly, we find no error and, thus, appellant's seventh proposition of law is not well taken.

## VI

In his eighth proposition of law, appellant contends that his convictions are against the manifest weight of the evidence. After a thorough review of the entire record before us, we are convinced that the evidence establishes appellant's guilt beyond a reasonable doubt. Therefore, we reject appellant's eighth proposition of law.

## VII

In his ninth proposition of law, appellant argues that his aggravated murder conviction was based solely on the uncorroborated testimony of an accomplice, *i.e.*, Glover Heard, in violation of former R.C. 2923.03(D), which provided:

"(A) No person, in attempting or committing a *theft offense, as defined in section 2913.01 of the Revised Code,* or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree." (Emphasis added.)

"No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence." Am.Sub. H.B. No. 511 (134 Ohio Laws, Part II, 1961).

Apparently, Glover was indicted for the aggravated murders of Ogle and Tincher and pled guilty to one count of complicity to murder. Thus, for purposes of this appeal, we will assume that Glover was an "accomplice" to the aggravated murder within the meaning of former R.C. 2923.03(D).[3]

In *State v. Pearson* (1980), 62 Ohio St.2d 291, 16 O.O.3d 332, 405 N.E.2d 296, paragraphs one and two of the syllabus, this court held, with regard to former R.C. 2923.03(D), that:

"1. R.C. 2923.03(D) can prohibit convictions for principal offenses, as well as prohibit convictions for the complicity offenses described in R.C. 2923.-03(A).

"2. In order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor. * * * "

In the case at bar, Glover's testimony implicating appellant in the aggravated murder is supported by independent, corroborating evidence. Appellant shot Tincher in the head at close range. Ogle was killed in a similar manner. The weapon used to kill Tincher was the same weapon used to kill Ogle. The murder weapon was owned by appellant. Appellant admitted that he was in the Hill Avenue apartment on the morning of the murders. Furthermore, appellant led police to Ogle's body knowing exactly where Ogle's body would be found.

We find that the state produced sufficient evidence to satisfy the corroboration requirement of former R.C. 2923.03(D) as we have heretofore understood that requirement. Accordingly, we reject appellant's ninth proposition of law.

## VIII

In the penalty phase, appellant presented two witnesses in an attempt to establish the existence of R.C. 2929.04(B) mitigating factors.

One of appellant's witnesses, Dr. Gerald Briskin, testified on direct examination that appellant, as a juvenile, had committed a manslaughter offense. During closing argument in the penalty phase, the state made several remarks concerning appellant's juvenile offense.

---

3. Compare *State v. Wickline* (1990), 50 Ohio St.3d 114, 117–118, 552 N.E.2d 913, 918.

In his fourth proposition of law, appellant claims that the state introduced evidence concerning appellant's juvenile record and used it as a nonstatutory aggravating circumstance. We disagree.

The record before us clearly shows that appellant introduced the evidence concerning his juvenile record. While, perhaps, the prosecution should not have commented further regarding the juvenile offense, we fail to find that appellant was prejudiced by the prosecutor's comments since appellant, through his witness, had already informed the jury of the prior offense. Further, we are not persuaded that appellant's juvenile record was considered by the jury or the judge as a nonstatutory aggravating circumstance. The jury was never instructed to consider the juvenile offense as an aggravating factor and, therefore, we assume that the juvenile offense was not considered as an aggravating circumstance. Accordingly, we reject appellant's fourth proposition of law.

## IX

The subject of appellant's second proposition of law concerns a note received by the trial judge during the jury's penalty phase deliberations. The note was signed by juror Georgia Lukasiewicz and said:

"After I saw Dr. Briskin on the stand I decided I should ask you if I am allowed to be a juror because I am a psychiatric patient and early in 1964 I had a dream after shock treatments. I saw Dr. Briskin in a dream. He was fat, carried a brief case and a clock. I thought he looked like SATAN. I never recall having seen this man in person."

After receiving this note, the trial judge questioned juror Lukasiewicz concerning her ability to fairly and impartially consider the evidence presented in the penalty phase. Juror Lukasiewicz affirmatively asserted that her dream would not affect her ability to decide the case and, thus, the trial court instructed her to return to the jury room and to continue deliberations.

Appellant suggests that juror Lukasiewicz was unqualified to sit as a juror due to "exhibited bias" and "abnormal reasoning." We have reviewed juror Lukasiewicz's responses to the questions asked of her both before trial and during the penalty phase. We find that juror Lukasiewicz adequately responded to these questions and that her statements indicate her ability to distinguish between her dreams on the one hand and reality on the other hand. Nothing in the record affirmatively establishes that juror Lukasiewicz was biased. Under these circumstances, we find no abuse of discretion and, hence, appellant's second proposition of law is not persuasive.

## X

In his eighteenth proposition of law, appellant contends that he was deprived of the effective assistance of counsel during the trial court proceedings. In his nineteenth proposition of law, appellant contends that he was denied the effective assistance of counsel in his appeal to the court of appeals. In our judgment, appellant has failed to meet his burden of establishing ineffective assistance under the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and, accordingly, we reject appellant's eighteenth and nineteenth propositions of law.

## XI

Having considered each of appellant's propositions of law, we must now independently review the death sentence for appropriateness and proportionality.

In the case at bar, appellant shot Ogle in the head and neck at close range during the course of an aggravated robbery. Appellant also shot Tincher in the head at close range. Again, we find that the aggravating specifications of which appellant was found guilty, R.C. 2929.04(A)(5) and (7), are clearly shown in the record before us.

Appellant introduced evidence on the mitigating factor that he lacked a substantial capacity to conform his conduct to the requirements of the law because of a mental disease or defect. We find that appellant did not establish the existence of this R.C. 2929.04(B)(3) factor by a preponderance of the evidence.

Appellant presented evidence concerning his family background and violent and unstable family environment. We conclude that these factors are entitled to some, but very little, weight in mitigation. Additionally, we have considered the youth of appellant (he was twenty years old at the time of the offenses) and conclude that this R.C. 2929.04(B)(4) factor is entitled to some weight.

Weighing the mitigating factors against the aggravating circumstances, we conclude that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

Finally, we have undertaken a comparison of the sentence in this case to those in which we have previously imposed the death penalty. We have upheld the death penalty in cases involving multiple murders (see, *e.g., State v. Moreland* [1990], 50 Ohio St.3d 58, 552 N.E.2d 894) and in cases involving robbery-murder (see, *e.g., State v. Greer* [1988], 39 Ohio St.3d 236, 530 N.E.2d

382). We find that appellant's death sentence is neither excessive nor disproportionate.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.

## APPENDIX

*"Proposition of Law No. I* [:] A capital conviction and death sentence cannot stand when the trial record is replete with prosecutorial misconduct.

*"Proposition of Law No. II* [:] A trial court errs when it fails to replace a juror after she exhibited bias and abnormal reasoning.

*"Proposition of Law No. III* [:] Ohio's mandatory capital sentencing scheme prevented appellant Montgomery's jury from deciding whether death was the appropriate punishment in violation of appellant Montgomery's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. IV* [:] A juvenile conviction should not be considered by a capital jury during the sentencing phase of a capital trial where the defense does not raise the defendant's lack of a criminal record as a mitigating factor.

*"Proposition of Law No. V* [:] A capital sentencer's refusal to weigh mitigating evidence and its reliance on non-statutory aggravating circumstances render the sentence of death unreliable, inappropriate and constitutionally infirm under the Eighth and Fourteenth Amendments to the United States Constitution and Section 9, Article I of the Ohio Constitution.

*"Proposition of Law No. VI* [:] It is error for a trial court to deny a capital defendant a one day continuance to prepare for the mitigation phase of his capital trial after a guilt verdict is returned.

*"Proposition of Law No. VII* [:] The trial court errs when it fails to grant appellant's motion for acquittal when there is insufficient evidence to sustain a conviction.

*"Proposition of Law No. VIII* [:] A conviction and death sentence cannot stand when it is against the weight of the evidence presented at trial.

*"Proposition of Law No. IX* [:] Former R.C. 2923.03(D) prohibited a conviction based solely on the uncorroborated testimony of an accomplice and the trial court errs in overruling a Crim.R. 29 motion for judgment of acquittal

where there was not sufficient evidence to corroborate the accomplice testimony.

*"Proposition of Law No. X* [:] A trial court errs when it fails to charge the jury on the lesser included offenses of involuntary manslaughter or voluntary manslaughter and incorrectly instructs the jury concerning a capital specification.

*"Proposition of Law No. XI* [:] A trial court errs by instructing a capital sentencing jury as to all the mitigating factors in R.C. 2929.04(B) when the defense had not raised all such factors in its mitigation presentation; the instruction violates an appellant's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XII* [:] Jury instructions requiring unanimity for a life verdict at the penalty phase deny the accused his right to a fair trial and freedom from cruel and unusual punishment in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XIII* [:] The trial court's penalty phase instruction on reasonable doubt shifted the burden of proof to appellant, and allowed the state to prove fewer than every element needed to impose the death sentence in violation of appellant's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XIV* [:] A prosecutor's use of peremptory challenges to exclude prospective jurors with some reservations about the death penalty violates a capital defendant's rights to a fair and impartial jury as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 5, 10 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XV* [:] The trial court erred in failing to excuse for cause two jurors that were biased against the appellant. This failure denied appellant a fair trial by an impartial jury as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 5, 10 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XVI* [:] The appellant's rights under the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution were violated when the prosecution used its challenges to remove a black member from appellant's jury.

*"Proposition of Law No. XVII* [:] The Sixth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution and Sections [*sic* ] 2945.25(C) of the Ohio Revised Code, guarantee an accused a fair trial and an impartial jury. The exclusion of potential jurors Gorsuch, Faison and Serke denied appellant Montgomery these constitutional guarantees.

*"Proposition of Law No. XVIII* [:] When a capital defendant receives the ineffective assistance of counsel the reliability of his conviction and death sentence are undermined.

*"Proposition of Law No. XIX* [:] The failure to raise or adequately address substantial capital and other well-established criminal law issues on appeal as of right deprives the capital defendant of the effective assistance of appellate counsel and the meaningful appellate review of a capital conviction guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution and R.C. 2929.05.

*"Proposition of Law No. XX* [:] The trial court's instruction on the mens rea element of 'purpose' created an unconstitutional conclusive presumption and relieved the state of its burden to prove this material element beyond a reasonable doubt.

*"Proposition of Law No. XXI* [:] Inflammatory and gruesome photos of the victim were admitted during the guilt phase of appellant Montgomery's trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XXII* [:] When a capital defendant's arrest is based on outstanding forgery warrants, the arrest is pretextual and any evidence obtained concerning the murder is inadmissible.

*"Proposition of Law No. XXIII* [:] Failure of the trial court to adequately admonish the jury violates appellant's right to a fair trial by an impartial jury as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XXIV* [:] It is error to instruct a capital sentencing jury that its verdict is only a recommendation, thereby diminishing the jury's responsibility for its decision and misleading the jury concerning its key role in sentencing and is in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

*"Proposition of Law No. XXV* [:] A capital defendant is denied his right to remain silent when the prosecutor comments to the jury concerning that silence in violation of the Fifth, Sixth and Fourteenth Amendments to the

United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

"*Proposition of Law No. XXVI* [:] Death qualification of a jury denies the accused equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution.

"*Proposition of Law No. XXVII* [:] Appellant Montgomery's rights under the Eighth and Fourteenth Amendments to the United States Constitution, Section 9, Article I of the Ohio Constitution, and R.C. 2929.04(B)(7), were violated when the trial judge prevented the sentencing jury from considering relevant proffered evidence in mitigation of the death sentencing.

· "*Proposition of Law No. XXVIII* [:] The death sentence imposed in appellant Montgomery's case was inappropriate and disproportionate and violated the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

"*Proposition of Law No. XXIX* [:] A motion for a change of venue should be granted when it is apparent that a fair and impartial trial cannot be had in the county in which the case is pending.

"*Proposition of Law No. XXX* [:] The felony-murder specification in R.C. 2929.04(A)(7) fails to narrow the class of persons eligible for the death penalty and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Section 9, Article I of the Ohio Constitution.

"*Proposition of Law No. XXXI* [:] The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution and Ohio Revised Code Section 2929.05 guarantee a convicted capital defendant a fair and impartial review of his death sentence. The statutorily mandated proportionality process in Ohio is fatally flawed thereby denying appellant Montgomery the above rights.

"*Proposition of Law No. XXXII* [:] The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I establish the requirements for a valid death penalty scheme. Ohio's statutory provisions governing the imposition of the death penalty, contained in [R.C.] 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05 do not meet the prescribed requirements and, thus, are unconstitutional, both on their face and as applied to appellant Montgomery."